# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

---

| | |
|---|---|
| NORMAN MACPHEE, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:18-cv-00830-ELR |
| | <u>CLASS ACTION</u> |
| Plaintiff, | |
| vs. | |
| MIMEDX GROUP, INC., et al., | |
| Defendants. | |

---

| | |
|---|---|
| MATTHEW KLINE, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:18-cv-00859-ELR |
| | <u>CLASS ACTION</u> |
| Plaintiff, | |
| vs. | |
| MIMEDX GROUP, INC., et al., | |
| Defendants. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

1421333_1

## I.    INTRODUCTION

The above-captioned cases are putative securities class actions on behalf of purchasers of MiMedx Group, Inc. ("MiMedx" or the "Company") securities during the March 7, 2013 through February 20, 2018 Class Period against defendants for purported violations of the Securities Exchange Act of 1934 (the "1934 Act").[1]  The Private Securities Litigation Reform Act of 1995 ("PSLRA"), which governs this action, requires district courts to consolidate related actions before appointing a lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  Here, the *MacPhee* and *Kline* actions are virtually identical and should be consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

After consolidation, the PSLRA provides that "the court shall consider any motion made by a purported class member in response to the notice" and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of

---

[1]    There is another virtually identical case also pending in the Southern District of New York: *Gordon v. MiMedx Group, Inc.*, No. 1:18-cv-01831 (S.D.N.Y. Feb. 28, 2018).  The Carpenters Pension Fund of Illinois (the "Pension Fund") is also filing a lead plaintiff motion in that case.  The claims and defendants are identical in all three actions.  However, the *Gordon* class period ends on February 21, 2018, the *MacPhee* class period ends on February 19, 2018, and the *Kline* class period ends on February 20, 2018.  The Pension Fund's transactions are the same regardless of when the class period ends.

class members."  15 U.S.C. §78u-4(a)(3)(B)(i).  The Pension Fund respectfully submits that it is the presumptively most adequate plaintiff in this case because it has filed a timely Motion in response to a notice, has the largest financial interest in the outcome of this litigation, and will typically and adequately represent the putative class's interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Pension Fund's selection of Robbins Geller Rudman & Dowd LLP as lead counsel for the putative class is reasonable and should be approved.  15 U.S.C. §78u-4(a)(3)(B)(v).

## II.  FACTUAL BACKGROUND

MiMedx is a biopharmaceutical company that focuses on biomaterials for soft tissue repair, such as tendons, ligaments, and cartilage, as well as other biomaterial-based products for other medical applications.  MiMedx utilizes a number of different distributors to deliver its products, including AvKARE, Inc., a federal contractor.  The revenue derived from MiMedx's distribution agreement with AvKARE makes up a significant portion of the Company's total revenue.

The complaints allege that defendants made materially false and misleading statements and/or failed to disclose adverse information regarding the Company's business and operations.  Specifically, during the Class Period, defendants concealed that MiMedx had been engaged in a "channel-stuffing" scheme designed to inappropriately recognize revenue that had not yet been realized and failed to disclose

- 2 -

1421333_1

the Company's financial ties to physicians as required by the Physician Payments Sunshine Act.  As a result of these false statements and/or omissions, MiMedx securities traded at artificially inflated prices during the Class Period, with its stock price reaching a high of $17.96 per share.

In December 2016, two former MiMedx employees filed a complaint against the Company alleging, among other things, retaliatory termination by MiMedx after they had reported fraudulent revenue recognition practices (the "Whistleblower Action").  In particular, the former employees alleged that MiMedx had engaged in a "channel-stuffing scheme" to "fraudulently recognize revenue [purportedly earned under its distribution agreement with AvKARE] in its certified financial statements before the revenue had been realized or realizable and earned."  ECF No. 1 at ¶3.  The Company denied the claims and sued the employees for tortious interference, among other things.

In September 2017, several market research analysts published reports that focused on the allegedly fraudulent revenue recognition practices of MiMedx alleged in the Whistleblower Action.  Again, MiMedx denied these allegations and sued each of the research companies for libel, slander, and defamation.

On February 20, 2018, MiMedx announced that its audit committee "ha[d] engaged independent legal and accounting advisors to conduct an internal

- 3 -

investigation into current and prior-period matters relat[ed] to allegations regarding certain sales and distribution practices at the Company." ECF No. 1 at ¶94. MiMedx advised investors that "Company executives are also reviewing, among other items, the accounting treatment of certain distributor contracts." *Id.* The Company further announced that, because of this internal investigation, it would delay the release of its fourth quarter and fiscal year 2017 financial results. On this news, the price of MiMedx shares fell nearly 40% to close at $8.75 per share on February 20, 2018.

Then, on February 22, 2018, *The Wall Street Journal* reported that MiMedx "has financial ties to more than 20 doctors . . . but the company hasn't reported these payments to the government under a 2013 law" that requires drug and medical-device makers to disclose payments or gifts they make annually to doctors and teaching hospitals. According to *The Wall Street Journal*, a company that knowingly fails to report doctor or hospital payments can face a maximum penalty of $1 million a year. Following publication of this article, the price of MiMedx shares fell another 13% over the next two trading sessions, to close at $7.83 per share on February 23, 2018.

On February 26, 2018, it was revealed that the U.S. Department of Justice is investigating whether MiMedx overcharged the government for its tissue repair products, as well as into the Company's distribution practices, which news caused the stock price to decline another 16%.

- 4 -

As a result of defendants' allegedly wrongful acts and omissions and the decline in MiMedx stock value, class members have suffered significant losses and damages.

## III.   ARGUMENT

### A.    The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the 1934 Act] has been filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §8u-4(a)(3)(B)(ii).  Under Rule 42(a), consolidation is appropriate when the actions involve common legal and factual questions.  *See* Fed. R. Civ. P. 42(a).  Indeed, "[c]onsolidation of complex actions that are related, particularly securities cases, is an effective use of judicial resources." *Adcock v. Netbank, Inc*., 2008 WL 11322962, at *3 (N.D. Ga. Apr. 21, 2008).

Here, the *MacPhee* and *Kline* Actions are well suited for consolidation as the complaints present identical claims for relief based on the same course of conduct by defendants.   "Judicial economy will be well-served by avoiding duplication of discovery, pre-trial issues, and class certification questions in these two very similar cases." *Adcock*, 2008 WL 11322962, at *3.

**B.     The Pension Fund Should Be Appointed Lead Plaintiff**

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. §78u-4(a)(3)(A)(i). The statutory notice was published on February 24, 2018. *See* Declaration of John C. Herman in Support of Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel ("Herman Decl."), Ex. A.

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

- 6 -

     (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The Pension Fund meets these requirements and should be appointed Lead Plaintiff.

### 1.     The Pension Fund's Motion Is Timely

The February 24, 2018, statutory notice published in this case advised purported class members of the pendency of the action, the claims asserted, the proposed class period, and the right to move the Court to be appointed as lead plaintiff within 60 days, or by April 25, 2018.  *See* Herman Decl., Ex. A.  Because the Pension Fund's Motion has been filed by the statutory deadline, the Pension Fund is eligible for appointment as lead plaintiff.

### 2.     The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

As evidenced by its Certification, the Pension Fund expended more than $1.1 million purchasing 80,280 shares of MiMedx stock during the Class Period at artificially inflated prices and suffered harm of approximately $385,500 as the price of MiMedx stock declined.  *See* Herman Decl., Exs. B, C.[2]  To the best of the Pension Fund's counsel's knowledge, there are no other plaintiffs with a larger financial

---

[2]     The Pension Fund's loss is the same regardless of whether the first in, first out or last in, first out accounting method is used.

- 7 -

interest.  Therefore, the Pension Fund satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3.    The Pension Fund Is Typical and Adequate of the Purported Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "The latter two elements, typicality and adequacy, are the only ones relevant to the lead plaintiff determination, and the inquiry is less stringent at this point in the litigation." *Adcock*, 2008 WL 11322962, at *4.

"One's claim is typical when it arises from the same course of events and relies on similar legal arguments to prove the defendant's liability." *Id.*  "Adequacy is satisfied where the potential lead plaintiff does not have adverse interests to those of the class, has retained competent counsel, and is otherwise competent to serve as class representative." *Id.*

Here, the Pension Fund satisfies the typicality and adequacy requirements. Its claim arises from the same alleged misrepresentations made by defendants and relies on the same legal arguments as the plaintiffs.  The Pension Fund has no conflicts that would preclude it from effectively representing the interests of the other class members.  In addition, the Pension Fund has retained Robbins Geller as counsel, a law

- 8 -

firm with vast experience prosecuting securities class actions. *See* Herman Decl., Ex. D.  As an institutional investor with prior experience serving as lead plaintiff, the Pension Fund is well-suited to serve as lead plaintiff in this case.  Finally, the Pension Fund's substantial loss provides the requisite interest to ensure vigorous advocacy.

Because the Pension Fund filed a timely Motion, has a large financial interest in the relief sought by the class, and is typical and adequate of the putative class, the Court should adopt the presumption that it is the presumptive lead plaintiff.

### C.    The Court Should Approve the Pension Fund's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  The Pension Fund has selected Robbins Geller to serve as lead counsel in this case.

Robbins Geller, a 200-attorney firm with offices nationwide and in this District, regularly practices complex securities litigation.  *See* Herman Decl., Ex. D.  District courts throughout the country, including this court, have recognized Robbins Geller's experience in litigating complex securities class actions and appointed Robbins Geller attorneys to lead roles in complex class action securities cases such as this.  *See, e.g.*, *Monroe Cty. Emps.' Ret. Sys. v. The Southern Co.*, No. 1:17-cv-00241-MHC, ECF

- 9 -

No. 22 (N.D. Ga. Apr. 11, 2017) (appointing Robbins Geller as lead counsel in securities case) (Herman Decl., Ex. E).

Based upon Robbins Geller's extensive experience and proven track record as counsel in securities class actions, the Pension Fund's selection of Robbins Geller as lead counsel is reasonable and should be approved.

## IV.   CONCLUSION

The *MacPhee* and *Kline* actions are virtually identical and should be consolidated pursuant to Rule 42(a).  In addition, the Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff.  Accordingly, the Pension Fund respectfully requests that the Court grant its Motion.

DATED:  April 25, 2018                     Respectfully submitted,

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP


                                                       s/ John C. Herman
                                           ────────────────────────────
                                           JOHN C. HERMAN
                                           (Georgia Bar No. 348370)
                                           Monarch Tower, Suite 1650
                                           3424 Peachtree Road, N.E.
                                           Atlanta, GA  30326
                                           Telephone:  404/504-6500
                                           404/504-6501 (fax)
                                           jherman@rgrdlaw.com

- 10 -

1421333_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dmyers@rgrdlw.com

[Proposed] Lead Counsel for Plaintiff

CAVANAGH & O'HARA
JOHN T. LONG
2319 West Jefferson Street
Springfield, IL 62702
Telephone: 217/544-1771
217/544-9894 (fax)

Additional Counsel for Plaintiff

## Local Rule 7.1D Certification

Counsel for proposed lead plaintiff hereby certifies that the text of this pleading

has been prepared with Times New Roman 14, one of the fonts and point selections

approved by the Court in LR 5.1B.


                                   s/ John C. Herman
                                    John C. Herman

1421333_1

## Local Rule 23.1C(4)(c) Certification

John C. Herman, counsel for the Pension Fund, hereby certifies pursuant to LR

23.1(C)(4)(c) that Robbins Geller Rudman & Dowd LLP:

1.      Has not issued or caused to be issued more than one notice to putative

class members (except as authorized by LR 23.1C(4)(a)(iii));

2.      Has complied with the Local Rules of this Court; and

3.      Has complied with applicable State Bar of Georgia ethical rules.


                                    s/ John C. Herman
                            _____
                                    John C. Herman


1421333_1

CERTIFICATE OF SERVICE

I hereby certify that on April 25 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury that the foregoing is true and correct. Executed on April 25, 2018.

s/ John C. Herman
JOHN C. HERMAN

ROBBINS GELLER RUDMAN
    & DOWD LLP
3424 Peachtree Road, N.E., Suite 1650
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

E-mail:  jherman@rgrdlaw.com

1421333_1

# Mailing Information for a Case 1:18-cv-00830-ELR MacPhee v. MidMex Group, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey C. Block**
  jeff@blockesq.com

- **Marshall P. Dees**
  mdees@holzerlaw.com

- **Corey Daniel Holzer**
  cholzer@holzerlaw.com

- **William Thomas Lacy , Jr**
  tlacy@llptc.com,julie@llptc.com

- **Joyce Gist Lewis**
  jlewis@shinglerlewis.com,csloat@shinglerlewis.com

- **Alexandria Patel Rankin**
  arankin@holzerlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)